Filed 12/3/24  P. v. Houston CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C099286 |
| Plaintiff and Respondent, | (Super. Ct. No. CR-2015-3694) |
| v. | |
| ALAMAR CYRIL HOUSTON, | |
| Defendant and Appellant. | |

Defendant Alamar Cyril Houston was found guilty of multiple offenses after hitting and injuring four people while driving a stolen vehicle and was originally sentenced to 35 years in state prison.  The trial court subsequently resentenced defendant under Penal Code section 1172.75 to 32 years in state prison (further undesignated statutory references are to the Penal Code); the court struck three prior prison term enhancements but declined to strike a prior serious felony enhancement or otherwise reduce his sentence.  Defendant appeals his resentencing, arguing the trial court abused its discretion in not striking his prior serious felony enhancement under section 1385 and

1

erred in reimposing the upper term on one of his convictions. Finding no merit to these contentions, we affirm.

FACTS AND HISTORY OF THE PROCEEDINGS

In June 2015, defendant stole a pickup truck, abandoned it, and then stole a second SUV, which he used to twice hit a motorcyclist, injuring his arm, and then later used it to hit three bicyclists, seriously injuring all of them including one who was left with critical brain injuries. (See *People v. Houston* (Apr. 16, 2018, C083840) [nonpub. opn.].) Minutes later, defendant punched a drug store cashier in her face with his fist. (*Ibid.*) Police eventually apprehended defendant after he led them on a high-speed chase where he ran red lights, drove against traffic, and drove the wrong way on a one-way street. (*Ibid.*) Following his arrest, defendant exhibited symptoms common with using methamphetamine and admitted long-term methamphetamine use, but he tested negative for alcohol, amphetamines, antidepressants, anesthetics, benzodiazepine, and cannabinoids. (*Ibid.*)

At trial, a defense expert who treated defendant with antipsychotic medication after the crime spree opined that defendant suffered from delusions and had a primary psychiatric disorder such as schizophrenia or schizoaffective disorder that was exacerbated by his ingestion of controlled substances. (*People v. Houston, supra*, C083840.) Two mental health professionals, a psychiatrist who interviewed defendant remotely several months after the crime spree and a psychiatrist who treated defendant some years earlier, concluded defendant was malingering and did not suffer from schizophrenia. (*Ibid.*)

A jury found defendant guilty of four counts of assault with a deadly weapon (§ 245, subd. (a)(1); counts 2, 5, 8, 12); three counts of hit-and-run with injury (Veh. Code, § 20001, subds. (a) & (b)(1); counts 3, 6, 9); two counts of vehicle theft (Veh. Code, § 10851, subd. (a); counts 13, 14); simple assault on the drug store cashier (§ 240;

2

count 11); two counts of evading a peace officer (Veh. Code, §§ 2800.2, 2800.4; counts 15, 16); and resisting a peace officer (§ 148, subd. (a)(1); count 18). It found defendant not guilty of three counts of attempted murder (§§ 664, 187; counts 1, 4, 7); one count of driving under the influence of drugs causing injury (Veh. Code, § 23153, subd. (a); count 10); one count of unlawful use of a controlled substance (Health & Saf. Code, § 11550; count 19); and assault on the drug store cashier by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 11).

The jury found one enhancement true for personally inflicting great bodily injury, and the trial court found true that defendant had a prior serious felony conviction, which was also a strike, and had served four prior prison terms. (§§ 667, subds. (a), (b)-(i), 667.5, subd. (b).) This court affirmed defendant's convictions on appeal, but remanded for the trial court to strike one of the prior serious felony enhancements that it had erroneously stayed. (*People v. Houston, supra*, C083840.)

In August 2022, the trial court recalled defendant's sentence under former section 1171.1[1] (now section 1172.75) (Stats. 2022, ch. 58, § 12) and requested briefing from the parties. Defendant filed a resentencing brief urging the court to dismiss the three prior prison term enhancements (§ 667.5, subd. (b)), which were no longer valid under section 1172.75, and to dismiss the prior serious felony enhancement (§ 667, subd. (a)) under section 1385 as amended by Senate Bill No. 81 (2020-2021 Reg. Sess.) (Senate Bill 81), which defendant argued created a rebuttable presumption in favor of dismissing one or more enhancements. To support dismissal, defendant cited the following mitigating

---

[1] The trial court's notice of hearing mistakenly referred to section 1171, which was subsequently renumbered to section 1172.7 (Stats. 2022, ch. 58, § 11), rather than 1171.1, which was renumbered to section 1172.75, the statute at issue here. Under section 1172.7, certain drug enhancements imposed under Health and Safety Code section 11370.2 are no longer valid; defendant's sentence did not include any such drug enhancements.

factors: (1) that multiple enhancements were alleged in a single case; (2) that applying the enhancements could result in a sentence of over 20 years; (3) that the current offenses were connected to defendant's mental illness; and (4) that the enhancement was based on a prior conviction that was over five years old. Defendant also argued that given his conduct in prison over the past six years, evidence showed he would not pose a danger to the public if the court struck one or both enhancements.

According to defense counsel, defendant had only one prison write-up and had reduced his security classification to the lowest level that was possible for him given his violent felony commitment offenses. He had engaged in substance abuse programs, had been employed, and had received mental health treatment while incarcerated, including medication to manage his symptoms. Counsel also noted that when defendant committed the offenses, he was homeless and was dealing with significant mental health issues.

While the People agreed the trial court should strike the three prior prison term enhancements as invalid, they argued that further reducing defendant's sentence was not in the interest of justice and endangered public safety. According to the People, although defendant had completed some educational and vocational training while incarcerated, he had an extensive criminal history since 1995, including at least eight prior felonies and numerous misdemeanors; he scored "moderate" on the California Statics Risk Assessment;[2] and he scored "high" for substance abuse and employment problems and "medium" for criminal personality on the CDCR's COMPAS[3] assessment tool. Prison records showed defendant had two prison rule violations for refusing a medical examination or treatment, and for refusing to accept assigned housing. Defendant also

---

[2] According to the People, the California Statics Risk Assessment is a tool used by the Department of Corrections and Rehabilitation (CDCR) to predict an inmate's risk to reoffend based on their past criminal history and characteristics.

[3] Correctional Offender Management Profiling for Alternative Sanctions.

had a history of escape from custodial institutions, and his escape risk was assessed as "high." He had also been placed on suicide watch and had exhibited self-harming behaviors for several months. Defendant's need for mental health services after his incarceration was extensive; in May 2018, he was diagnosed with schizoaffective disorder and he consistently failed to take a portion of his prescribed medication.

Although defendant's mental health improved with treatment, by March 2022 multiple inmates had reported that defendant's mental health had declined and "they were concerned 'for their own safety' " because defendant talked to himself and had threatened to kill them at night. That same month, defendant agreed to be transferred to an intermediate or acute psychiatric inpatient program; the referral was based on findings that included, among other things, that defendant was at a high risk of harming others because he expressed the intention to do so, intensified by psychotic symptoms, with a plan and/or means to carry it out. In April 2022, defendant was found gravely disabled if not administered medication, and an involuntary medication order was granted until April 2023. In July 2022, it was recommended that defendant be housed alone in a single cell.

In reply, defendant reiterated that he suffered from a mental illness that substantially contributed to the current offenses and argued that dismissing one of the enhancements would not result in an immediate release date.

The judge who had presided over defendant's original jury trial and sentencing conducted the resentencing hearing in July 2023. At the hearing, one of the victims spoke about the injuries the bicyclists had suffered, and how they were still dealing with the effects of defendant's crimes, emphasizing the trial court's original statements during sentencing that defendant was "a danger to the public and a menace to civilized society. [Defendant's] crimes in this case displayed a level of evil and depravity rarely seen in this court."

Defense counsel continued to advocate for striking one or more of the enhancements under Senate Bill 81 given the existence of multiple section 1385,

subdivision (c) mitigating factors. Counsel asserted that defendant's mental illness was connected to the crimes and that he had performed well in prison and was now on medication that helped with his mental symptoms. Defense counsel also submitted an updated prison record showing that upon further consideration his CDCR escape classification was reduced to a walk-away.

The prosecution asked the trial court to take judicial notice of the trial record, which the court granted. The prosecutor argued that defendant remained a significant danger to society and that striking the prior prison term enhancements, and nothing more, was warranted.

After considering the parties' arguments and evidence, the trial court struck the three prior prison term enhancements for a total aggregate sentence of 32 years but declined to further reduce defendant's sentence. In so ruling, the court first noted that defendant had "lived a life of crime since 1995 through 2015 when he was sentenced in this case . . . ." The court next acknowledged, as it did at the time of the original sentencing, that defendant "has mental health conditions." While the court agreed that it could not "punish people for being mentally ill," and that it could not say defendant's mental health did not affect his conduct in this case, it nevertheless found that reducing defendant's sentence further by dismissing the prior serious felony enhancement would endanger the public's safety. After examining defendant's mental health and conduct while incarcerated, the court found that although he was taking steps to address his mental health issues, those issues still affected defendant "in such a way that cause[d] the Court concern for the public at large." The court noted that the previous year a different judge had determined that defendant lacked capacity to consent or refuse treatment with psychiatric medications and had ordered he be involuntarily medicated. This fact, according to the court, "truly raise[d] the risk factor in the [c]ourt's mind to the public. And the risk factor is, it is such a level that the [c]ourt is not willing to take that risk."

Defendant timely appealed.

DISCUSSION

Defendant challenges the trial court's exercise of discretion at the resentencing hearing. He argues that under amended section 1385, the trial court erred by refusing to dismiss the prior serious felony enhancement because several mitigating factors under the newly enacted legislation were present, including that multiple enhancements were alleged, that imposition of the enhancement could result in a sentence longer than 20 years, that the underlying offense was connected to defendant's mental illness, and that the enhancement was based on a conviction that is over five years old. He also impliedly challenges the trial court's finding that dismissing the enhancement would endanger public safety. Finally, defendant asserts, in passing, that the trial court should have reconsidered imposing the upper term on the principal assault count (count 5). We find no merit to his contentions.

I

*Applicable Legal Principles*

Senate Bill 81 amended section 1385 "to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice."[4] (*People v. Sek* (2022) 74 Cal.App.5th 657, 674; Stats. 2021, ch. 721, § 1.) The new law applies to criminal defendants, like defendant here, who were sentenced after January 1, 2022. (§ 1385, subd. (c)(7).)

The statute as amended now states that the presence of one or more of nine enumerated "mitigating circumstances" "weighs greatly in favor of dismissing the

---

[4] Assembly Bill No. 200 (2021-2022 Reg. Sess.) (Stats. 2022, ch. 58, § 15), effective June 30, 2022, made technical, nonsubstantive changes to section 1385 that do not affect the issues on appeal. Assembly Bill No. 1754 (Stats. 2023, ch. 131, § 160), which took effect on January 1, 2024, also made changes to section 1385 that do not affect this appeal.

enhancement[ ] unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) As pertinent here, section 1385, subdivision (c) provides:

"(1)  Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.

"(2)  In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others. [¶] . . . [¶]

"(B)  Multiple enhancements are alleged in a single case.  In this instance, all enhancements beyond a single enhancement shall be dismissed.

"(C)  The application of an enhancement could result in a sentence of over 20 years.  In this instance, the enhancement shall be dismissed.

"(D)  The current offense is connected to mental illness.  [¶] . . . [¶]

"(H)  The enhancement is based on a prior conviction that is over five years old."  (§ 1385, subd. (c)(1) & (2).)

For purposes of the statute, a "mental illness" means "a mental disorder . . . in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders" except for antisocial personality disorder, borderline personality disorder, and pedophilia. (§ 1385, subd. (c)(5).)  "A court may conclude that a defendant's mental illness was connected to the offense if, after reviewing any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements,

8

statements by the defendant's mental health treatment provider, medical records, records or reports by qualified medical experts, or evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense, the court concludes that the defendant's mental illness substantially contributed to the defendant's involvement in the commission of the offense." (*Ibid.*)

We review a trial court's order denying a motion to dismiss a sentence enhancement under section 1385 for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 373-374.) A trial court may abuse its discretion where "its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at pp. 377-378.) The party attacking the sentence bears the burden of clearly showing that the sentencing decision was irrational or arbitrary. (*Id.* at p. 376.) Absent such a showing, " ' "the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*Id.* at pp. 376-377.) We will not reverse merely because reasonable people might disagree with the trial court's discretionary sentencing choice. (*Id.* at p. 377.) A reviewing court is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge. (*Ibid.*)

II

*Prior Serious Felony Enhancement*

Defendant first contends that where, like here, multiple enhancements are alleged in a single case, all enhancements beyond a single enhancement "shall be dismissed" under section 1385, subdivision (c)(2)(B).[5] He asserts the mandatory nature of the

---

[5] Appellant's opening brief mistakenly refers to section 1385, subdivision (c)(3)(B) rather than subdivision (c)(2)(B).

statute's plain language compelled the trial court to dismiss the prior serious felony enhancement. We disagree with defendant's reading of the statute.

Reviewing courts have repeatedly held, and we agree, that trial courts retain discretion to strike enhancements, even in the context of the language in section 1385, subdivision (c)(2)(B) (regarding multiple enhancements) and subdivision (c)(2)(C) (regarding application of an enhancement that could result in a sentence of over 20 years) that enhancements "shall be dismissed" when those mitigating factors are present. (See, e.g., *People v. Mendoza* (2023) 88 Cal.App.5th 287, 297 [language of subdivision (c)(2)(C) does not mandate enhancement dismissal]; *People v. Anderson* (2023) 88 Cal.App.5th 233, 241, review granted Apr. 19, 2023, S278786 [trial court retains discretion to dismiss despite "shall be dismissed" language in subdivisions (c)(2)(B) and (c)(2)(C)]; *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098, review granted Apr. 12, 2023, S278894 (*Ortiz*); *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 15-21; *People v. Walker* (2022) 86 Cal.App.5th 386, 396, review granted Mar. 22, 2023, S278309.)[6] Contrary to defendant's interpretation, nothing in subdivision (c) of section 1385 *mandates* a trial court dismiss an enhancement solely because there exists a mitigating factor enumerated in subdivision (c)(2) of the statute.

Until recently, the appellate courts were split on whether evidence of mitigating factors listed in section 1385, subdivision (c)(2), created a rebuttable presumption that a trial court must dismiss the applicable enhancements unless it affirmatively finds that dismissing the enhancement would endanger public safety. (Compare *People v. Walker, supra*, 86 Cal.App.5th 386, review granted [concluding that section 1385's mandate to

---

[6] Notably, the defendant in *Walker* did not assert that subdivision (c)(2)(B)'s "shall be dismissed" language entitles that mitigating circumstance to a different construction than the others, and the Supreme Court had "no occasion to consider that question" when granting review in *Walker*. (*People v. Walker* (2004) 16 Cal.5th 1024, 1035, fn. 5]. (*Walker*))

"afford great weight" to the mitigating circumstances erected a rebuttable presumption that obligated a trial court to dismiss the enhancement unless it found doing so would endanger public safety]; with *Ortiz, supra*, 87 Cal.App.5th 1087, review granted [trial court retains discretion to dismiss enhancement in the interest of justice if it determines that countervailing factors besides a danger to public safety outweigh enumerated mitigating circumstances].) On August 15, 2024, the California Supreme Court resolved the issue in *Walker*, S278309,16 Cal.5th, concluding that "absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present." (*Walker, supra*, 16 Cal.5th at p. 1024.)

"In other words, if the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Walker, supra*, 16 Cal.5th at p. 1029.)

Here, the trial court expressly found that dismissing the prior serious felony enhancement to lessen defendant's sentence would endanger the public. The same judge presided over the original sentencing hearing where several victims recounted the violent nature of defendant's crimes and the significant injuries they sustained after he mowed them down in a vehicle while they were riding their bikes. The defenseless bike riders, who were strangers to defendant, endured not only excruciating and life-threatening physical injuries but also everlasting psychological trauma.

The trial court originally acknowledged that while there was a "mental health component to [defendant's] life," the jury had convicted defendant of very serious crimes, that he had a significant criminal history, and that any aggravating factors far outweighed factors in mitigation. The court found that defendant was "a danger to the public and a

11

menace to civilized society," and that he had to be "separated from society for the maximum term permitted under the law." In the court's view, defendant's current offenses, "displayed a level of evil and depravity rarely seen in this court. [Defendant] intentionally ran a stolen vehicle into bike riders from behind, [and he] unprovoked punched a female clerk in the face," which were "cowardly acts against strangers." In doing so, the court found defendant inflicted serious harm on his victims, and, for at least three of the victims, he inflicted lasting damage that literally changed the trajectory of their lives. These safety concerns were proper considerations.

At the resentencing hearing, the same trial court took judicial notice of the court file and again revisited the violent and horrific nature of defendant's crimes. The court also considered defendant's lengthy criminal history and antisocial conduct, his numerous prior felony convictions, and noted that a different judge had recently granted an involuntary psychotropic medication order to address defendant's ongoing mental health concerns.

The trial court appropriately considered the very nature of the violent acts defendant committed against the five innocent victims in determining whether striking the prior serious felony enhancement to lessen defendant's sentence posed an intolerable danger to society such that striking the enhancement would not be in the interests of justice. The court's comments at the resentencing hearing, when considered in light of its previous public endangerment finding, show that the court found that the presence of any mitigating factors under section 1385 had sufficiently been neutralized because defendant *continued* to pose a danger to society.

We cannot say the trial court abused its discretion in declining to dismiss the prior serious felony enhancement where defendant had led a long life of crime and had used a stolen vehicle to run over four strangers and had punched a fifth stranger in the face, which constituted significantly violent acts against unknown members of the public. Furthermore, there were reports that defendant had threatened to kill various cellmates as

12

recently as 2022, that he had to be housed in a single cell away from others, that he sometimes refused to fully take prescribed medication, and that he had been ordered to be involuntarily medicated until at least 2023 to address ongoing mental health concerns. That reasonable minds might differ from the court's careful balancing of the totality of the information before it is not sufficient to find an abuse of discretion or warrant reversal. (*People v. Carmony, supra*, 33 Cal.4th 377.) The fact that the trial court surmised that some people might never fully be cured from a mental health condition does not mean the court's danger to public safety finding is without support.

### III

### *Reconsideration of Upper Term*

In a single sentence, defendant asserts the trial court should have reconsidered imposing the upper term on count 5, assault with a deadly weapon, when it resentenced him under section 1172.75. He points to his mental health condition at the time of the offense and its reported improvement with medication during his prison term as justification for a lower term.

Defendant, however, never raised this issue during the resentencing proceedings. His failure to raise the issue below forfeits his appellate challenge. (*People v. Scott* (1994) 9 Cal.4th 331, 351-354 [to preserve a sentencing issue for appellate review, the defendant must raise it in the trial court].)

In any event, the plain language of section 1172.75, subdivision (d)(4) provides: "*Unless the court originally imposed the upper term*, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (Italics added.) Here, the trial court originally imposed the upper term and, under the plain language of section 1172.75,

subdivision (d)(4), could do so again.  (See e.g., *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455, 458 [concluding that "section 1172.75, subdivision (d)(4) carves out an exception to the general rule that all ameliorative changes to the law must be applied at a section 1172.75 resentencing and does not require aggravating factors to be found true beyond a reasonable doubt if the upper term was previously imposed"].)  This is especially so since defendant *never* requested that the court revisit the upper term issue or otherwise argued that an upper term sentence was improper.

DISPOSITION

The judgment is affirmed.

_____

HULL, Acting P. J.

We concur:

_____

BOULWARE EURIE, J.

_____

WISEMAN, J.*

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.